## Case No. 2,201.

### BURRITT v. RENCH et al.

[4 McLean, 325.][1]

Circuit Court, D. Ohio. Nov. Term, 1847.

PRINCIPAL'S LIABILITY FOR AGENT'S ACT — LIEN OF CONSIGNEE FOR ADVANCES — STOPPAGE IN TRANSITU —CARRIERS — LIABILITY FOR LOSS OR DAMAGE.

1. N. P. Iglehart became the agent of the defendants, who constituted a transportation company from Cincinnati. by the canal and lake to New York. He afterward associated with him his brother, and the business was done in the name of N. P. Iglehart & Co.; held, that the transportation company, having recognized the agency of the firm, by correspondence and otherwise, are bound by its acts.

2. The plaintiffs as consignees, having made advances to the consignor, have a paramount lien upon the goods for the advances.

[See De Wolf v. Howland. Case No. 3,852; McCobb v. Lindsay. Id. 8,704; Matthews v. Menedger. Id. 9,289; Brander v. Phillips. 16 Pet. (41 U. S.) 121: The Frances. 8 Cranch (12 U. S.) 418; Ryberg v. Snell, Case No. 12,189.]

3. The consignor has no right to stop them in transitu, or to divert them in any manner.

4. The defendants, as carriers, are bound for the safe delivery of the goods, in quantity and condition as shipped.

5. A part of the goods were not delivered, another part was delivered in a damaged state— held, that the defendants were liable to the

plaintiffs, to the full value of the goods, in a sound state in New York; and that to the extent of the advances made, they could recover damages on this principle.

[At law. Action by the survivors of Francis Burritt against Rench and others to recover for loss of and damage to goods delivered to defendants as common carriers. The plaintiffs had a verdict, but by consent it was set aside, and judgment rendered for plaintiffs for a stipulated sum.]

King and Anderson, for plaintiffs.
Fox and Walker, for defendants.

OPINION OF THE COURT. This action is brought to recover damages as consignees, against the defendants, who constitute a transportation company from Cincinnati to Toledo, and thence to New York, on account of a shipment of certain articles specified in the bill of lading, some of which were not delivered, and others were damaged. The jury being sworn, the evidence was introduced. Authority was given by the defendants to N. P. Iglehart, to receipt for produce and freight generally, from Cincinnati to the eastern cities, by the way of the Miami canal to Toledo, and by Lake Erie, or intermediate ports, at such rates as he might deem best for their interests, and generally to do and act for the interest of the lines. The power was given to N. P. Iglehart, he doing business at that time on his own account; subsequently he formed a partnership which constituted the firm of N. P. Iglehart and Company, who continued to receipt for the line, and forward, and who, in their firm capacity, corresponded with the owners of said line, and to whom all letters from said line were addressed. The bill of lading specified to Toledo, and to re-ship for New York, etc., to be delivered in good order at the port of New York, and to Burritt & Johnston, at the rate of 22 cents per hundred for hemp, and 28 cents per hundred on rope, to Toledo. The rates from Toledo to New York to be fixed by Cobb & Co., owners of the line from Toledo to New York City. There were shipped seventy bales of hemp, and three hundred coils of rope, signed N. P. Iglehart & Co., and dated 2d October, 1845. Advertisements were given in evidence by the company, stating the terms of transportation on the whole line, etc. Thirty-one bales of hemp were received, and three hundred coils of rope. Fifty-five coils of the rope were damaged. In November, 1845, such hemp was worth $120 per ton; the rope was worth from 5½ to 5¾ per pound. The hemp was injured. The carriers refused to deliver the property until they received payment of the freight. In accordance with the well-established custom in such cases, the hemp was sold at auction for $245.95. after paying charges, which amounted to the sum of $329.45. The damaged rope sold for $110, after paying charges. Advances were made by the plaintiffs to Sals-

[1] [Reported by Hon. John McLean, Circuit Justice.]

bury, the consignor, which are still unpaid. On the 20th of October, 1845, Cobb & Co. shipped, on account of Salsbury, to the care of Burritt & Johnston, New York, forty-nine bales of the said hemp. On the 15th of May, 1846, shipped twenty-eight bales of hemp on account of Salsbury, to Everette & Battell, by Salsbury's order. 13th July, 1846, the transportation company paid to Salsbury, at Buffalo, $100 in full, on compromise for damages and delays on hemp, etc.

Objection is made to the authority of N. P. Iglehart & Company, as it appears that the written authority was given only to N. P. Iglehart; and it is contended, that did not authorize Iglehart to associate with him in the discharge of the duties of his agency, other persons not known to the defendants, and in whom they could have reposed no confidence: that the duty of receiving and forwarding freight, to bind the transportation company, must be performed within the written power. There would be great force in this objection, if the company had not, by correspondence and acts, recognized N. P. Iglehart & Co., as their agents. This having been done by the company, is a sufficient recognition of the agency of Iglehart & Company's acts, which are appropriate and necessary in the performance of their agency. A general recognition of such an agency, which leads the public to consider them as agents, and to intrust them with their property for transportation, is sufficient evidence of their authority. Under such circumstances, it is not to be expected nor required that individuals shall ask the exhibition of their authority, when it is generally known to the public, and recognized by the agents of the company. It seems that in virtue of the bill of lading, advances were made by the consignees, Burritt & Johnston. These advances gave them a lien upon the goods, for re-imbursement, and vested in them a right paramount to that of all others. Even the consignor had no right to stop the goods in transitu, or to make any disposition of them, whatever. By the bill of lading, the property in the goods for the purpose above stated, was vested in the consignees. And the defendants, as carriers, were responsible for their safe delivery, in quantity and in the same condition as at the time of their shipment to the plaintiffs, in New York. This, it seems, the defendants have not done. A part of the goods appear to have been abstracted by the consignor, at Toledo; and the remaining part was delivered at New York, a portion of them in a damaged state. It seems that forty-nine bales of the hemp, abstracted from the freight, in the bill of lading, were shipped on account of Salsbury, the consignor, to the care of Burritt & Johnston, on the 20th of October. But these bales, if received, were not received at the time of the first receipt of the goods by the plaintiffs, and it is submitted to the jury whether there is evidence of their delivery subsequently. On the 20th of May, 1846, it appears twenty-eight bales of hemp were shipped by Cobb, at Toledo, on account of Salsbury, to Everett & Battell, of Buffalo; and on the 13th of July, 1846, it seems Salsbury received one hundred dollars on a compromise for the loss on the hemp.

The compromise cannot affect the rights of the plaintiffs. Salsbury had no power to make it, against the interests of the consignees. On these facts, the question arises —1. Whether the plaintiff can maintain an action against the defendants? Of this, I suppose, there can be no doubt. He was the owner of the goods, by the advance he made, and the transfer by the bill of lading against the consignor and all others, until he was indemnified for the money advanced and costs and charges. 2. On what ground shall the liability of the defendants rest? They are responsible for the injury done to the goods, by a failure in the performance of their contract. And the court instruct you, gentlemen of the jury, to ascertain the value of the goods, in a sound state as when shipped, at the time of their delivery to the plaintiffs in New York, and in this estimate you will include any part of the goods not delivered. From this you will deduct the gross amount for which the goods sold, and by deducting this sum from the estimated value of the goods in a sound state, at New York, at the time of their delivery, the difference will show the damages to which the defendants are liable. But this does not show the measure of damages which the plaintiffs are entitled to recover. Although their lien on the goods was paramount to all others, it was not an absolute property in them, but a qualified one, to secure them in the advances made. These advances, with interest, deducting therefrom the net proceeds of the goods sold, will constitute the amount which the plaintiffs are entitled to recover. And if this amount shall be less than the general damages before stated, still the recovery of the plaintiffs can not exceed the sum above stated. But if the advances and interest shall exceed the value of the property in a sound state, the plaintiffs can only recover the amount of general damages, leaving to them a recourse against the consignor for the residue. It is supposed, however, that the advances, etc., will fall short of the value of the property in a sound state.

By agreement, verdict set aside, and judgment entered for one hundred dollars and costs, the plaintiffs retaining the net proceeds of the sale, etc.

———————

BURROUGHS (HATCH v.). See Case No 6,-203.

BURROUGHS (MARSH v.). See Cases Nos. 9,111 and 9,112.